## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## AIDEN LOWELL BECK,
*Defendant-Appellant.*

Multnomah County Circuit Court
111253996; A151303

344 P3d 140

Richard E. Oberdorfer argued the cause for appellant. With him on the brief was Oberdorfer Law Firm LLC.

Pamela J. Walsh, Senior Assistant Attorney General, argued the cause for appellant. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for misdemeanor driving under the influence of intoxicants (DUII), ORS 813.010. Although defendant asserts numerous assignments of error, we write to address only two, and affirm as to the others without discussion. Defendant assigns error to the trial court's denial of his motion to suppress statements made after he invoked his right to counsel. Defendant also assigns error to the trial court's refusal to give his proposed jury instructions regarding the necessity of proving a voluntary act. We conclude that we need not decide whether the trial court erred in denying defendant's motion to suppress because any error in admitting defendant's statements was harmless. We also conclude that the trial court did not err in refusing to give the proposed jury instruction because there was no evidence in the record to support defendant's theory of the case. Accordingly, we affirm.

When reviewing a ruling on a motion to suppress, "[a] trial court's findings of historical fact are binding on appellate courts if there is constitutionally sufficient evidence in the record to support those findings." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We state the facts in accordance with that standard of review.

Bystanders found defendant unresponsive behind the wheel of his car, with the engine running, in the slow lane of traffic on Barbur Boulevard in Portland. Officer Myers arrived and successfully revived defendant. Upon waking, defendant believed that he was sleeping in his home. Once defendant complied with Myers's request that he step out of the car, Myers smelled a "moderate" odor of alcohol and noticed that defendant was swaying. Defendant denied alcohol and drug use.

Paramedics arrived and agreed with Myers that defendant was intoxicated and had not been involved in an accident. Myers arrested defendant, advised him of his *Miranda* rights, and placed him in custody. Myers asked defendant if he understood his *Miranda* rights. Initially, defendant kept repeating in response, "I was sleeping, though." Myers asked again, and defendant responded, "I guess so."

Once defendant was in custody at the police station, Officer Thorsen arrived and began the implied consent breath test process. Defendant asked Thorsen if he could use a phone to call his parents and then, about 10 minutes later, asked to contact an attorney. Thorsen then read aloud part of the DUII form stating that defendant had a right to privately consult with an attorney before agreeing to DUII testing. Thorsen put defendant in a room with a phone and a phone book, and told defendant that he could contact whomever he wanted. Thorsen informed defendant that he would be back in about 20 minutes and left him alone—but when Thorsen returned, defendant was asleep.

Thorsen woke defendant and escorted him into an interview room, which contained an Intoxilyzer machine. Defendant said that he had not been able to contact an attorney; Thorsen again advised him of his *Miranda* rights, and defendant affirmed that he understood those rights. Thorsen proceeded to ask defendant a series of questions, which defendant answered to the effect that he did not remember driving and had not consumed alcohol or drugs. Defendant said that he owned the car in which he was found; that, as far as he knew, he had driven alone; that he was not diabetic, sick, or injured; and that he was not taking any medications. During the interview, defendant did not indicate that he wanted an attorney present.

After the interview, Thorsen read defendant the "rights and consequences" section of the implied consent form, which explained the potential consequences of taking or refusing the breath test. Defendant initially responded that he did not know what he should do because he was unable to contact an attorney. After Thorsen further explained the rights and consequences, defendant consented to a breath-test sample, which revealed a blood-alcohol content of 0.14 percent.

At trial, defendant moved to suppress the statements he made during the interview, arguing that, because he had invoked his right to counsel, Thorsen violated that right by conducting the interview. The trial court concluded that defendant did not invoke the right to counsel and denied defendant's motion to suppress.

Defendant assigns error to the trial court's denial of his motion to suppress. "Whether a defendant's statements amount to an unequivocal invocation of his or her right against compelled self-incrimination, an equivocal invocation, or no invocation at all, is a question of law." *State v. Harding*, 221 Or App 294, 301, 189 P3d 1259, *rev den*, 345 Or 503 (2008). In determining whether a defendant's statement was unequivocal, we view the statement "in light of the totality of the circumstances at and preceding the time that it was made, 'to ascertain whether a reasonable officer in the circumstances would have understood that defendant was invoking his rights.'" *Id.* (quoting *State v. Holcomb*, 213 Or App 168, 176, 159 P3d 1271, *rev den*, 343 Or 224 (2007)).

On appeal, defendant argues that his statement to Thorsen that he wanted to contact an attorney was an unequivocal request for counsel. Defendant alternatively argues that, even if the request could be characterized as ambiguous, Thorsen had an obligation to further inquire to clarify his intent. The state contends that defendant's request was equivocal and that there was no invocation. The state further argues that a reasonable officer would not have understood that defendant was invoking his right to counsel when he "took a nap rather than pursuing counsel" and when he did not request that an attorney be present for the interview. The state contends that defendant's actions after he had an opportunity to call an attorney demonstrated that he had changed his mind and had chosen to waive his right to counsel for purposes of the interview. Alternatively, the state argues that if the trial court erred, the error was harmless because defendant's statements were not likely to have affected the verdict, so reversal is not warranted.

We need not decide whether admission of defendant's statements during the interrogation was erroneous because any error was harmless.[1] "Oregon's constitutional

---

[1] *State v. Martinez*, 263 Or App 658, 328 P3d 1277 (2014), decided after oral argument in this case, addressed a similar circumstance in which a defendant was interrogated after invoking a right to counsel in the context of submitting to a breath test. In that case, we concluded that a reasonable officer in the circumstances would have understood only that the defendant was invoking his limited right to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test under Article I, section 11, of the Oregon Constitution, but would not have understood that the defendant was invoking the derivative

test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" *State v. Davis,* 336 Or 19, 32, 77 P3d 1111 (2003). Here, defendant made no statements that incriminated him concerning alcohol or drugs. The only potentially damaging statements were that he owned the car in which he was found and that he was not a diabetic or on medication. However, in light of all the other evidence that defendant was driving under the influence of intoxicants, there is little likelihood that the admission of those statements affected the verdict.

We proceed to the second of the two issues we have undertaken to address. At trial defendant also submitted jury instructions, including Uniform Criminal Jury Instruction 1065 on "voluntary act." The instruction stated:

"For criminal liability, Oregon law requires the performance of a voluntary act.

"(1)   Act—a bodily movement.

"(2)   Voluntary act—a bodily movement performed consciously."

The court reviewed the instruction before the close of evidence. The state objected to the instruction on the ground that it was "misleading," because it implied that the state had to prove a mental requirement. Defendant argued that, even though DUII is a strict liability offense, any crime requires a showing of a voluntary act, and there was no evidence in the record that defendant was engaged in a conscious act. The court declined the jury instruction because it did not construe defendant's statements to the police "as providing a basis for any understanding that an involuntary act was involved here or that the defendant acted in a way that was * * * done unconsciously." The court also determined that there was no "factual predicate" for the different factual scenarios discussed such as use of Ambien that would create "an issue of voluntary act" and a "question of whether

right to the assistance of counsel under Article I, section 12. 236 Or App at 667. Because we conclude that any error in this case was harmless, we express no opinion as to how the holding in *Martinez* may affect the analysis of circumstances like those presented in this case.

or not someone did something consciously or unconsciously." The trial court then instructed the jury that, to prove DUII, the state needed to prove that defendant drove a vehicle, on premises open to the public, in Multnomah County at the time alleged in the information, with a blood alcohol level of 0.08 percent or higher.

Defendant assigns error to the trial court's refusal to give the voluntary act jury instruction. "A party is entitled to have the jury instructed on the law which supports his theory of the case where there is evidence to support that theory and the party submits an instruction that correctly states the law." *State v. Loew*, 130 Or App 370, 373, 881 P2d 837 (1994) (internal quotation marks omitted). "A jury instruction is supported by the evidence 'if there was any competent evidence to support it.'" *Crismon v. Parks*, 238 Or App 312, 314, 241 P3d 1200 (2010) (internal quotation marks omitted). We review the trial court's refusal to give a requested instruction for legal error. *State v. Branch*, 208 Or App 286, 288, 144 P3d 1010 (2006). We assess the evidence in the light most favorable to the party offering the jury instruction. *Id.*

Defendant argues that the state must prove that he engaged in a voluntary act in order to impose criminal liability, even for a strict-liability crime like DUII. Defendant further contends that the trial court's refusal to instruct the jury on the need for a voluntary act violated defendant's due process right to present his defense, citing *State v. Brown*, 306 Or 599, 604, 761 P2d 1300 (1988) ("[I]f there is any evidence to support each element of a theory for which a party contends, the theory must be submitted for the jury's consideration, no matter whether the judge is persuaded."). The state counters that the trial court found that there was sufficient evidence in the record of a voluntary act and that defendant did not present any evidence that his confusion and forgetfulness amounted to evidence that he had acted unconsciously. The state argues that the trial court's instruction on the elements of DUII were sufficient without a voluntary act instruction.

Both the state and defendant cite *State v. Newman*, 353 Or 632, 302 P3d 435 (2013), which was under review

by the Supreme Court between the time of briefing and oral argument in this case. The Supreme Court's opinion, which came out after oral argument, determined that the minimal voluntary act requirement of ORS 161.095(1) applies to the driving element of DUII. The defendant in *Newman*, charged with felony DUII, contended at trial that he had a sleepwalking disorder that meant that he was unconscious and "sleep driving" on the night in question. The defendant presented evidence of a history of sleepwalking, and a friend provided testimony confirming that history. The defendant attempted to present evidence from a sleep-disorder expert that his sleepwalking could have resulted in "sleep driving"—that is, the defendant unconsciously getting behind the wheel, starting the car, and driving. *Newman*, 353 Or at 634. The trial court excluded the proffered evidence as irrelevant because it concluded that DUII is a strict-liability offense under *State v. Miller*, 309 Or 362, 788 P2d 974 (1990). *Newman*, 353 Or at 635. The defendant was then convicted of the DUII charge. *Id.* The Supreme Court, however, determined that the state must prove that a defendant committed a voluntary act with respect to the driving element of DUII. *Id.* at 646 (distinguishing *Miller*, 309 Or at 371, where the court determined that "the being-under-the-influence-of-an-intoxicant element of DUII, ORS 813.010, requires no proof of a culpable mental state"). Accordingly, the Supreme Court reversed for a new trial so that the defendant could present evidence that he was not conscious when he drove and so that the state could present evidence that defendant's drinking or another volitional act resulted in defendant driving that evening, including evidence such as defendant engaging in "sleep driving" before the incident and failing to take adequate precautions to remove access to his car keys. *Newman*, 353 Or at 646.

In this case, defendant is correct that, under *Newman*, the law requires that a defendant commit a voluntary act with respect to the driving element of the crime of DUII. However, it is not enough that defendant's jury instruction correctly state the law; there also must be evidence in the record to support defendant's theory of the case as relevant to that instruction. Defendant presented evidence that, at the scene, he did not remember driving and

that his confused and forgetful state at the scene could have been consistent with diabetes, a head injury, or Ambien use. However, unlike the defendant in *Newman*, who presented evidence that he suffered from a sleepwalking disorder, defendant here presented no evidence to support a theory that he actually suffered from diabetes or a head injury or had used Ambien. Likewise, unlike in *Newman*, where the defendant sought to present evidence that a sleepwalking disorder could potentially cause someone to unconsciously get behind the wheel and start a car and begin driving, all without a voluntary act, defendant did not proffer and does not point to evidence that he suffered from a condition that could likewise cause someone to drive without committing a voluntary act. While the state has the burden to prove defendant committed the charged crime, there must be evidence in the record to support a theory that would support the giving of the proffered instruction. Therefore, the trial court did not err in refusing to give the voluntary act jury instruction.

Affirmed.