FLYNN, J.
*184 **81 The legislature has directed that a person who is convicted of a crime that resulted in "economic damages" to a victim must pay the victim restitution in "the full amount of the victim's economic damages as determined by the court." ORS 137.106(1)(a). In this case, defendant was convicted of driving under the influence of intoxicants and assault in the third degree after striking a pedestrian with his car, and the trial court ordered him to pay almost $ 155,000 in restitution for the victim's medical expenses. We allowed review to consider whether the trial court erred in refusing to apply the civil law defense of comparative fault to reduce the amount of economic damages that defendant would be required to pay as restitution. We conclude that defendant's conviction for third-degree assault establishes a degree of culpability for which the defense of comparative fault would be unavailable in a civil action. Thus, at least under the circumstances of this case, the trial court correctly refused to reduce the amount of restitution by the victim's alleged comparative fault.
I. BACKGROUND
Defendant was driving under the influence of intoxicants late at night when he struck the victim, who had walked onto the road in a dark area that was not marked for pedestrian crossing. He pleaded guilty to one count of driving under the influence of intoxicants and one count of assault in the third degree, but he resisted the state's request for restitution in the amount of the victim's full medical bills. Defendant offered evidence that the victim's own negligence was the primary cause of the collision and urged the trial court to apply the civil doctrine of comparative fault to reduce the requested restitution.[1] The trial court refused to consider the victim's alleged negligence and ordered defendant to pay the requested restitution.
**82 The Court of Appeals affirmed the judgment of the circuit court, holding that the text of the restitution statute expressly precludes the court from applying comparative fault principles to apportion damages. State v. Gutierrez-Medina , 287 Or. App. 240, 246, 403 P.3d 462 (2017). This court allowed review, and we now affirm the decision of the Court of Appeals, albeit on a different ground. We conclude that defendant's conviction for third-degree assault establishes that he was aware that he was using a deadly or dangerous weapon in a way that created a substantial risk of serious physical injury and that he consciously disregarded that risk. Therefore, defendant's conviction for third-degree assault establishes that he acted with a culpable mental state for which the doctrine of comparative fault would not be available in a civil action. Because we hold that the defense of comparative fault would be unavailable to defendant in a hypothetical civil action for the same injury, we decline to address the Court of Appeals' conclusion that ORS 137.106 precludes trial courts from reducing the amount of restitution when the victim is partly at fault for the injury.
II. DISCUSSION
The circuit court ordered defendant to pay restitution under ORS 137.106(1), which provides:
*185 "When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court * * * evidence of the nature and amount of the damages. * * * If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."
Defendant does not dispute that he was convicted of a crime that resulted in economic damages. He also does not dispute that the evidence supports the trial court's finding that the victim incurred economic damages, in the form of medical expenses, in the amount that the court ordered as restitution. Defendant contends, however, that he was entitled to reduce his restitution obligation by proving that the victim **83 was also at fault for the injury that required the medical care.
Defendant argues that the legislature intended to incorporate the civil law defense of "comparative fault" into the determination of "economic damages" that a criminal defendant must pay as restitution. Defendant relies on several cases in which this court stated that civil law concepts perform a significant role in a trial court's determination of "economic damages" for purposes of imposing restitution. In particular, defendant points to State v. Ramos , 358 Or. 581, 368 P.3d 446 (2016), in which this court explained "that the legislature's cross-reference to the definition of 'economic damages' applicable in civil actions, and the legislature's purpose in creating the restitution procedure as a substitute for a civil proceeding, make civil law concepts relevant to our interpretation of ORS 137.106." Id. at 594, 368 P.3d 446. We concluded in Ramos that the amount of "economic damages" for purposes of imposing restitution is limited by the civil law concept that a defendant is liable only for damages that are "reasonably foreseeable." Id. at 596, 368 P.3d 446. In State v. Islam , 359 Or. 796, 800, 377 P.3d 533 (2016), this court again looked to limitations on the damages that a plaintiff can recover in a civil action to determine that the amount of restitution that the defendant would be required to pay to the local retailer from whom the defendant stole a pair of jeans must be measured by the wholesale value, not the retail value, of the jeans. Defendant argues that the statutory defense of comparative fault, ORS 31.600(1), is another limitation on the amount of economic damages that the legislature intended to incorporate into the concept of "economic damages" that a criminal defendant must pay as restitution. From that premise, defendant concludes that the trial court erred in refusing to consider his evidence of the victim's fault.
There is another step in the analysis, however. To reach defendant's desired conclusion, his argument requires us to accept his minor premise that, in a hypothetical civil action against him for causing the same injury, the defense of comparative fault would be available to reduce his liability. The premise is not sound. As we shall explain, the statutory defense of civil comparative fault is available only to defendants who act with a degree of culpability for **84 which the common law defense of contributory negligence would have been available. The common law defense based on a plaintiff's contributory negligence was not available to a defendant who acted with a culpability greater than what the common law considered to be "gross negligence"-conduct that was either "wanton" or intentional. And, in pleading guilty to third-degree assault, defendant necessarily admitted to elements that would require a hypothetical civil jury to conclude that defendant's culpability fell within the range of "wanton" conduct. Thus, even if we assume that the legislature intended to incorporate the civil law defense of comparative fault into the calculation of criminal restitution under ORS 137.106, the defense would be unavailable to a defendant who commits third-degree assault in the manner that defendant did.
A. Comparative fault applies only to fault of the type to which contributory negligence would have been a defense.
Before 1971, Oregon recognized the common law defense of contributory negligence, *186 under which some plaintiffs whose own negligence contributed to their injuries to any extent were barred from recovering damages. The 1971 legislature abandoned contributory negligence and adopted instead a statutory defense that is now called "comparative fault," under which some plaintiffs whose claims previously would have been defeated by contributory negligence could now recover a proportionate share of their damages. Towe v. Sacagawea, Inc. , 357 Or. 74, 107, 347 P.3d 766 (2015) (citing Or. Laws 1971, ch. 668, § 1); former ORS 18.470 (1971). As originally enacted, former ORS 18.470 (1971) provided that contributory negligence would not bar recovery if the negligence of the person seeking recovery was not as great as the negligence of the person against whom recovery was sought, but that any damages allowable would be diminished in proportion to the amount of negligence of the person recovering.
In 1975, the legislature amended the statute to, among other things, substitute the word "fault" for the word "negligence." Former ORS 18.470 (1975) ; Or. Laws 1975, ch. 599, § 11. Although the title of the statute continued to use the phrase "comparative negligence," and still does today, the concept then became known as comparative fault.
**85 The version of that statute that is in effect today, now codified at ORS 31.600(1), is identical in all material respects to the 1975 amended statute. ORS 31.600(1) provides:
"Contributory negligence shall not bar recovery in an action * * * to recover damages for death or injury to person or property if the fault attributable to the claimant was not greater than the combined fault of all persons specified in subsection (2) of this section [specifying categories of people whose fault may or may not be compared to that of the claimant], but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the claimant. This section is not intended to create or abolish any defense."
This court has explained that the 1975 amendment was intended to cover "actions based on tortious conduct, however described, in which contributory negligence is an appropriate defense." Johnson v. Tilden , 278 Or. 11, 17, 562 P.2d 1188 (1977). In reaching that conclusion, we emphasized the statement of Representative Dave Frohnmayer, that, under the 1975 changes, "[a]pportionment of damages is expressly extended to all actions to recover damages for injury to persons or property in which contributory negligence may properly be asserted as a defense." Id. at 17, 562 P.2d 1188 (quoting Minutes, House Judiciary Committee, May 28, 1975, Appendix G (written statement by Representative Dave Frohnmayer)). That legislative intention is reflected in the text of the statute, which specifies that the legislature did not intend to create any defense that did not otherwise exist. Thus, the rule of comparative fault would reduce defendant's responsibility for the victim's full damages, even in a hypothetical civil action, only if defendant's conduct is equivalent to conduct for which the defense of contributory negligence would have been available before 1971.
B. Comparative fault does not apply in a civil action for conduct involving a mental state more culpable than "gross negligence."
As defendant recognizes, the defense of contributory negligence was not available to all civil defendants. If the defendant acted intentionally or in a manner that was "wanton," then contributory negligence by the plaintiff did **86 not bar recovery, as this court explained in Cook v. Kinzua Pine Mills Co. et al. , 207 Or. 34, 293 P.2d 717 (1956). The plaintiff in Cook was driving on a private logging road when she encountered a logging truck that was owned by the defendant and driven by one of its employees (also a defendant). The plaintiff pulled off to the side of the road to permit the truck to pass, but the truck collided with her car, severely injuring her. In a tort action against the defendants, the plaintiff alleged two theories of liability. In a first count, the plaintiff alleged that the driver of the truck "carelessly, recklessly, and negligently" drove the truck into her car. In a second count, she alleged that the driver struck her car "with knowledge of" her presence, "recklessly and in a wanton manner, and with an utter disregard" for her safety. In their answer to the complaint, the defendants *187 alleged that the plaintiff was contributorily negligent in failing to keep a proper lookout and in failing to keep her automobile under control.
After the plaintiff prevailed at trial, the defendants appealed, raising issues that required this court to clarify the claims for which the defense of contributory negligence was and was not available to the defendants. This court construed the first count of the complaint to allege that the defendants' conduct was negligent and explained, "if plaintiff proved only simple negligence on the part of the defendants she could not recover if defendant proved that she was herself guilty of negligence contributing to the accident." Id. at 42, 293 P.2d 717. On the other hand, the court construed the second count to allege that the defendants' conduct was wanton and held, "if the plaintiff established her claim of wanton misconduct on the part of the defendants, as alleged in count two of the complaint, the defense of contributory negligence would not be available to defendants." Id .
In discussing the circumstances in which contributory negligence operated as a defense, this court in Cook defined four categories of conduct "into which the infinite variety of fact situations must fall": "(1) [s]imple negligence"; "(2) gross negligence"; "(3) injury to the person of another committed in a 'wanton' manner, meaning the doing of an intentional act of an unreasonable character in disregard of a risk known to the actor, or so obvious that he must be taken **87 to have been aware of it and so great as to make it highly probable that harm would follow, usually accompanied by a conscious indifference to consequences"; and "(4) [a]ssault and battery where there is an actual intent not only to do an act but to cause personal injury." Id . at 58-59, 293 P.2d 717. The court emphasized that claims alleging the first two categories of fault could be defeated by the defense of contributory negligence, but that "contributory negligence is no defense" for a defendant who acts either in a "wanton" manner or with an "intent" to cause injury. Id.
The court quoted from a leading torts treatise to explain why "nearly all courts have held that ordinary negligence on the part of the plaintiff will not bar recovery" when the defendant's conduct is "that aggravated form of negligence, approaching intent, which has been characterized variously as 'wilful,' 'wanton,' or 'reckless[.]' " Id . at 42-43, 293 P.2d 717 (quoting William L. Prosser, Law of Torts § 51, 289-90 (2d ed. 1955)). As Prosser explained, "[s]uch conduct differs from negligence not only in degree but in kind, and in the social condemnation attached to it." Id . Thus, under the common law, if a defendant's conduct could be characterized as "wanton," then the plaintiff's contributory negligence was no defense. That is the line that the legislature carried forward when it created the defense of comparative fault: if the defendant's conduct was at least "wanton," comparative fault is no defense.
C. A conviction for third-degree assault establishes that the defendant acted with a mental state that is more culpable than the civil standard of "gross negligence."
Defendant recognizes that his argument for applying comparative fault to reduce the amount of his criminal restitution requires this court to conclude that defendant's criminal culpability, if translated to a hypothetical civil action, would align with categories of culpability for which the defense of comparative fault is available. But he contends that the evidence in this case meets that test. Defendant argues that his culpability under the circumstances of this case is comparable to common law "gross negligence," because he drove with a blood-alcohol content of .11 percent, he stopped after the crash, and he showed remorse. He **88 adds that there was no evidence that he was "staggeringly drunk" or visibly intoxicated. Thus, he argues, the defense of comparative fault would have been available to him in a hypothetical civil claim for the same conduct.
Defendant's argument, however, overlooks the weight that we must give to his conviction. The question is not whether the facts that defendant identifies could support a finding of "gross negligence" in a hypothetical civil action; the relevant comparison must be based on the culpable mental state that is established by defendant's conviction for third-degree assault. As part of his plea of *188 guilty to assault in the third degree, ORS 163.165(1)(a), defendant admitted that he
"recklessly caused serious physical injury to [the victim] by means of a motor vehicle, a dangerous weapon, which [he] drove on a public road under the influence of intoxicants."
That admission establishes a degree of culpability that, in a hypothetical civil action, would fall within the category of "wanton misconduct," for which the injured person's negligence provides no defense.
The task of understanding where particular conduct falls in relation to the line between "gross negligence" and "wanton" misconduct is one with which this court has repeatedly struggled. As we have previously acknowledged, "definitions of gross negligence, as approved by this court, disclose a wide variety, and in a few cases, direct inconsistency." Falls v. Mortensen , 207 Or. 130, 144, 295 P.2d 182 (1956), overruled in part on other grounds by Lindner v. Ahlgren , 257 Or. 127, 477 P.2d 219 (1970). Those seeming inconsistencies arise in part because, in certain statutory contexts, this court has construed the term "gross negligence" as meaning conduct that is actually comparable to the common law classification for "wanton" conduct.
For example, many of this court's older cases discuss the term "gross negligence" in the context of Oregon's "guest passenger" statutory immunity, ORS 30.115. That statute was amended in 1979 to remove immunity from motor vehicle liability, but the amendment did not change the statute in any other respect. Or. Laws 1979, ch. 866, § 7. ORS 30.115 **89 grants owners and operators of aircraft and watercraft, and formerly granted owners and operators of motor vehicles, a broad immunity from liability for injuries to guest passengers, unless the conduct was intentional or the owner or operator was intoxicated or acted with a degree of culpability that the statute describes as "gross negligence." Id. Because of the specific way that ORS 30.115 defines "gross negligence,"[2] many of this court's guest-passenger cases required the plaintiff to prove culpability equivalent to the common law concept of "wanton misconduct" to defeat the statutory immunity. Zumwalt v. Lindland , 239 Or. 26, 37-38, 396 P.2d 205 (1964) (explaining that under this court's construction of the statute, "any conduct reckless enough to render a defendant liable under ORS 30.115 is also wanton misconduct").
Outside of that statutory context, however, this court continued to define common law "gross negligence" as involving a lesser degree of culpability than "wanton misconduct" and continued to hold that, if a defendant acted with a degree of culpability that was at least "wanton," then the defendant could not assert the plaintiff's negligence as a defense. Zumwalt , 239 Or. at 32, 396 P.2d 205.[3] Thus, in attempting to determine whether particular conduct rises to a degree of culpability for which the common law defense of contributory negligence would not have been available, the relevant guidance comes from this court's cases discussing the distinction between the common-law concept of "gross negligence" and the common law concept of "wanton" conduct for purposes of contributory negligence.
One of those cases is Falls , in which we highlighted this court's inconsistency with regard to the term "gross negligence" and undertook to clarify the range of culpable **90 conduct that will be considered "wanton." The plaintiff in Falls was crossing the street at a point other than an intersection when he was struck by the defendant, who was intoxicated and driving on the wrong side of the road. 207 Or. at 132, 295 P.2d 182. The plaintiff alleged that the defendant acted *189 "with wanton disregard for the rights and safety of others," and the defendant alleged that the plaintiff was contributorily negligent. Id . at 132-34, 295 P.2d 182. On appeal from a judgment for the plaintiff, the defendant challenged the trial court's instruction to the jury that "contributory negligence is no defense to an action based upon a defendant's wanton disregard of the rights of others," a statement that this court described as "undoubtedly correct." Id. at 134, 295 P.2d 182.
This court also concluded that the trial court correctly instructed the jury that "wanton misconduct," for which contributory negligence is no defense, means:
"an intentional doing or failing to do of an act when one knows or has reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates unreasonable risk of harm to others but also involves a high degree of probability that substantial harm will result to him."
Id. at 135, 295 P.2d 182. After an extensive examination of the authorities that define the "wanton misconduct" for which contributory negligence was no defense, this court concluded that the trial court's definition was "supported by a great weight of authority." Id. at 147, 295 P.2d 182. This court emphasized that the quoted definition was similar to that used by Prosser to define "wantonness," for which contributory negligence was no defense:
" 'Wantonness,' or 'recklessness' * * * means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."
207 Or. at 137, 295 P.2d 182 (quoting Prosser, Law of Torts § 33 at 151). Falls also emphasized that the trial court's definition of "wanton misconduct" was "substantially the same as" conduct that was described in the **91 Restatement (First) of Torts , section 500 (1934), as "reckless disregard of the safety of another."[4]
In a later case, this court made clear that it "approved" the Restatement definition of "reckless disregard of safety" in section 500 as "an equivalent for" willful or wanton misconduct. Taylor v. Lawrence , 229 Or. 259, 264, 366 P.2d 735 (1961). Moreover, in Taylor , the court noted that it had "also approved the gloss on that rule found in comment 'c' to section 500," which emphasized that conduct sufficient to satisfy the degree of culpability that the Restatement called "reckless disregard"-and that this court called "wanton misconduct"-did not require proof that the defendant actually knew that his conduct would create the unreasonable risk:
" 'In order that the actor's conduct may be reckless, it is not necessary that he himself recognize it as being extremely dangerous. His inability to realize the danger may be due to his own reckless temperament or to the abnormally favorable results of previous conduct of the same sort. It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct.' "
Id. at 264-65, 366 P.2d 735 (quoting Restatement § 500, comment c). Thus, as we reiterated in Taylor , " 'expressions such as "reckless disregard", "reckless state of mind," "conscious indifference," "conscious choice of action," are not to be taken to mean that there must be proof that defendant actually had such a state of mind.' " Id. at 265, 366 P.2d 735 (quoting Williamson v. McKenna , 223 Or. 366, 397-98, 354 P.2d 56 (1960) ). Rather, "such expressions are appropriate to describe the hypothetical state of mind of the hypothetical reasonable man who, faced with *190 the dangerous situation, nevertheless elected to encounter it." **92 Id. at 398, 354 P.2d 56. In other words, the word "wanton" described not only a person who acted with actual knowledge and disregard of the risk but also one who acted without such knowledge if a reasonable person would have realized the risk.
A conviction for third-degree assault establishes a degree of culpability that, if compared to common law civil concepts of fault, would fall within the range of culpability that represents "wanton" conduct, and thus a degree of culpability for which the victim's negligence affords no defense. As ORS 163.165(1)(a) specifies:
"(1) A person commits the crime of assault in the third degree if the person:
"(a) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon[.]"
For purposes of that offense, the mental state "recklessly" is defined as follows:
" '[r]ecklessly' * * * means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."
ORS 161.085(9).
Given that definition, the culpable mental state of a person who is guilty of third-degree assault can be divided into three components: (1) the nature of the risk; (2) the degree of risk; and (3) the degree of awareness with which the person acts in the face of that risk. The culpability of a person who causes harm through conduct that civil law classifies as "wanton" can be divided into the same three components to permit a meaningful comparison. Based on that comparison, we conclude that a criminal defendant who is guilty of third-degree assault has acted with a degree of culpability that is at least as great as that of a civil defendant whose conduct meets the threshold for wantonness.
The alignment between the criminal culpability and the classifications of civil fault is not seamless, in part because the former consists of specific elements while the **93 latter involves a range of culpability. But a conviction for third-degree assault necessarily establishes a degree of culpability that is at least as great as the degree of culpability that satisfies the threshold for civil "wanton" conduct.
First, the nature of the risk is comparable. A conviction for third-degree assault establishes that there was a risk the person's act would cause "serious physical injury to another," ORS 163.165(1)(a), while proof in a civil action that a person caused physical injury through "wanton" conduct requires proof of a risk that the person's act-or failure to act-would cause "substantial" bodily harm. See , e.g. , Taylor , 229 Or. at 264, 366 P.2d 735 (citing Restatement § 500 and comment c).
The degree of risk is also comparable. A conviction for third-degree assault under ORS 163.165(1)(a) establishes that the person used a "deadly or dangerous weapon" under circumstances that presented a "substantial and unjustifiable" risk that the person would cause "serious physical injury" with the weapon. ORS 163.165(1)(a) ; ORS 161.085(9). Proof in a civil action that a person caused physical injury through "wanton" conduct requires proof that the person acted-or failed to act-under circumstances that presented an "unreasonable" and "highly probable" risk that "substantial" bodily harm would result, but the risk of harm need not be that which flows from use of a deadly or dangerous weapon. Taylor , 229 Or. at 264, 366 P.2d 735.
Finally, the mental state with which a person must create the risk of injury, to be guilty of third-degree assault, establishes a degree of culpability that would prove "wantonness" in a civil action. A conviction for third-degree assault establishes that the person actually was "aware of and consciously disregard[ed]" the risk. ORS 161.085(9) ; ORS 163.165(1)(a). In a civil action for the same injury, "wantonness" would involve a range of mental states into which proof of the mental state required for third-degree assault would fall. Although proof of "wanton" conduct may involve proof that the person actually *191 was aware of and consciously disregarded the risk, as does third-degree assault, "wantonness" does not require that proof. Rather, wantonness can be proven if a "reasonable" person would have realized the risk. Taylor , 229 Or. at 264, 366 P.2d 735. **94 Indeed, this court has already considered the relationship between the criminal mental state "recklessly" and the degrees of culpability in a civil action and, in doing so, reached the same conclusion that we reach here through more protracted analysis. In State v. Hill , 298 Or. 270, 280, 692 P.2d 100 (1984), the defendant was convicted of third-degree assault after he drove under the influence of intoxicants and injured his passenger. 298 Or. at 272, 692 P.2d 100. This court reversed the assault conviction because we concluded that the trial court erroneously instructed the jury in a way that permitted jurors to find that the defendant acted recklessly if he was not actually aware of the risk when he drove under the influence of intoxicants but reasonably should have been aware of the risk. Id. at 278-79, 692 P.2d 100. This court observed that the jury instruction would have been appropriate to describe the mental state that established civil liability under the guest passenger statute (i.e. , the mental state that we had equated to "wantonness"), but the court emphasized that criminal recklessness requires a "higher mental state," because it requires the actor to be "aware of the risk and consciously disregard it." Id. at 279, 692 P.2d 100. See also State v. Lewis , 352 Or. 626, 639 n. 6, 290 P.3d 288 (2012) (noting that "recklessness now requires a higher mental state than" the threshold for liability "under the guest passenger statute because the defendant must be aware of and consciously disregard the applicable risk) (internal quotation marks and citation omitted).
In short, if a person uses a deadly or dangerous weapon in a way that the person is aware will create a substantial risk of serious physical injury and consciously disregards that risk, as is established by a conviction for third-degree assault, then the person necessarily has acted with a degree of culpability that the civil common law would classify as at least "wanton." As this court recited in Cook , that conduct "differs from negligence not only in degree but in kind, and in the social condemnation attached to it." 207 Or. at 43, 293 P.2d 717 (internal quotation marks and citation omitted). And a defendant who engages in such conduct cannot assert the plaintiff's negligence as a defense. We, thus, reject defendant's premise that the defense of comparative fault would have been available to him in a hypothetical civil action for the same injury caused under the same circumstances. That **95 conclusion leaves no basis for this court to consider defendant's argument that ORS 137.106 permits the trial court to reduce a victim's "economic damages" for purposes of imposing restitution.
The decision of the Court of Appeals and the judgment of the circuit court are affirmed.
Duncan, J., dissented and filed an opinion, in which Balmer, J., joined.
DUNCAN, J.
As the majority correctly notes, the terms at issue in this case, including "reckless," "gross negligence," and "wanton," have been used in different ways in Oregon cases. The majority concludes that criminal recklessness, as admitted by defendant in this case, falls within wantonness, which precludes use of the comparative fault defense, as opposed to gross negligence, which does not preclude the use of that defense. See Cook v. Kinzua Pine Mills Co. et al. , 207 Or. 34, 58-59, 293 P.2d 717 (1956) (stating that the defense of contributory negligence is available to a defendant who is negligent or grossly negligent, but not one who acts wantonly or intentionally); Fassett v. Santiam Loggers, Inc., 267 Or. 505, 510, 517 P.2d 1059 (1973) concluding that contributory negligence is not a defense to the commission of "an intentional act which involved a high degree of probability that harm would result and to have demonstrated a reckless disregard of consequences"); see also Johnson v. Tilden , 278 Or. 11, 17, 562 P.2d 1188 (1977) (explaining that comparative fault statute was intended to apply in actions in which contributory negligence was an appropriate defense).
This court has described wantonness as
*192 "the doing of an intentional act of an unreasonable character in disregard of a risk known to the actor, or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow, usually accompanied by a conscious indifference to consequences."
Cook, 207 Or. at 58-59, 293 P.2d 717 (emphasis added). Likewise, this court has approved a jury instruction defining "wanton misconduct" as
"an intentional doing or failing to do of an act when one knows or has reason to know of facts which would lead **96 a reasonable man to realize that the actor's conduct not only creates unreasonable risk of harm to others but also involves a high degree of probability that substantial harm will result to him."
Falls v. Mortensen , 207 Or. 130, 135, 295 P.2d 182 (1956), overruled in part on other grounds by Lindner v. Ahlgren , 257 Or. 127, 477 P.2d 219 (1970) (emphasis added). Thus, wantonness involves a risk "so great as to make it highly probable that harm would follow." Cook , 207 Or. at 58, 293 P.2d 717 ; see also Falls , 207 Or. at 137, 295 P.2d 182 (quoting William L. Prosser, Law of Torts § 33, 151 (2d ed. 1955)) (wanton conduct involves a risk that is "extremely likely" to result in harm); Williamson v. McKenna , 223 Or. 366, 391, 354 P.2d 56 (1960) (stating that wanton conduct involves a "high degree of manifest danger"); id . at 396, 354 P.2d 56 (explaining that wanton conduct involves " 'an easily perceptible danger of substantial bodily harm or death and the chance that it will so result must be great,' " and holding, as a matter of law, that driver's conduct was not wanton (quoting Restatement (First) of Torts § 500 comment a (1934))).
In this case, the majority concludes that the culpable mental state for committing third-degree assault falls within the mental state of "wantonness." State v. Gutierrez-Medina , 365 Or. 79, 92, 442 P.3d 183 (2019). A person commits third-degree assault if the person "[r]ecklessly causes serious physical injury to another by means of a deadly or dangerous weapon[.]" ORS 163.165(1)(a). A person acts "recklessly" if the person
"is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."
ORS 161.085(9).
The majority compares the culpable mental state for third-degree assault and wantonness. Specifically, it compares the nature of the risk, the degree of risk, and the person's awareness of the risk. 365 Or. at 92, 442 P.3d at ----. I disagree with the majority's conclusion that the degree of risk is the same.
**97 Both recklessness and wantonness involve an unreasonable or unjustifiable risk, but it appears to me that recklessness is a less culpable mental state than wantonness because recklessness involves a substantial risk, whereas wantonness involves a highly probable risk. Thus, a person can be reckless without being wanton. See Cook , 207 Or. at 43, 293 P.2d 717 (quoting Prosser, Law of Torts § 51 at 291, for the proposition that wantonness is something more than an "extreme departure from ordinary standards").
The majority relies on State v. Hill , 298 Or. 270, 692 P.2d 100 (1984) for the proposition that recklessness requires a higher culpable mental state than wantonness.[1] This court's decision in Hill was based on the fact that, to be reckless, a person must be aware of and consciously disregard a risk, but a person can be wanton if the person is aware and consciously disregards a risk or if the person should have been aware of the risk. 298 Or. at 279, 692 P.2d 100. The Hill court was correct that the awareness required to *193 establish recklessness is greater than that required to establish wantonness. But it does not establish that a person who acts with that required awareness is wanton, because wantonness also depends on the degree of risk, which is greater than that required for recklessness.
Because I disagree with the majority's conclusion that defendant would be precluded from using the comparative default defense, I respectfully dissent.
Balmer, J., joins in this dissent.

At trial, defendant presented the testimony of a forensic accident investigation expert who had examined the scene of defendant's accident and concluded that defendant struck the victim when the victim walked five feet from a curb onto the roadway. The expert stated that the area was very dark, with no lighting, that there was no crosswalk, and that the victim did not have the right of way. The expert concluded that, "based on the circumstances, a sober driver would not have been able to avoid the collision with the victim, and the victim was in the best position to have avoided the collision."

ORS 30.115(2) defines "gross negligence" to "refer[ ] to negligence which is materially greater than the mere absence of reasonable care under the circumstances, and which is characterized by conscious indifference to or reckless disregard of the rights of others."

Despite this court's effort in Zumwalt to correct confusion about the proper terminology to describe the degree of culpability for which the plaintiff's negligence was no defense, some slippage continued. See Fassett v. Santiam Loggers, Inc ., 267 Or. 505, 507-08, 517 P.2d 1059 (1973) (explaining that "simple negligence cannot be a defense" if the defendant acts with culpability equivalent to "reckless disregard" but calling that degree of culpability "gross negligence").

As quoted in Falls , Restatement section 500 defined "reckless disregard of the safety of another" as follows:
"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him."
207 Or. at 136-37, 295 P.2d 182.

As the majority notes, in Hill , this court considered whether evidence that a defendant acted with criminal recklessness would be enough to establish liability under the guest-passenger statute. To establish liability under that statute, a plaintiff had to prove that the defendant acted with "gross negligence," which-in that context-was the equivalent of "wantonness." Zumwalt v. Lindland , 239 Or. 26, 37-38, 396 P.2d 205 (1964) (explaining that "any conduct reckless enough to render a defendant liable under [the guest-passenger statute] is also wanton misconduct").