Argued and submitted April 30, 2018, affirmed April 8, petition for review denied August 27, 2020 (366 Or 827)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STACY SUMMER WHITESIDE,
*Defendant-Appellant.*

Yamhill County Circuit Court
14CR18786; A162934

464 P3d 452

Defendant appeals from a judgment of conviction for failure to perform the duties of a driver when property is damaged, ORS 811.700 (2013). Defendant first argues that the trial court erred by refusing to give her requested special jury instruction, which would have allowed the jury to excuse defendant's actions if it found that she reasonably and honestly believed that it was impossible to act in accordance with ORS 811.700. Defendant also argues that the court incorrectly imposed restitution because she was entitled to the civil law defense of comparative fault. *Held*: The trial court did not err in rejecting the requested special jury instruction because there was no evidence to support that it was impossible for defendant to comply with her obligations under ORS 811.700. Further, the trial court did not err in declining to award restitution according to an apportioned percentage of fault because ORS 811.706, the restitution statute that applies to ORS 811.700, does not incorporate civil-liability concepts.

Affirmed.

Ronald W. Stone, Judge.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.*

POWERS, J.

Affirmed.

_____
* Egan, C. J., *vice* Garrett, J. pro tempore.

**POWERS, J.**

Defendant appeals from a judgment of conviction for failure to perform the duties of a driver when property is damaged, ORS 811.700 (2013)—commonly referred to as a "hit and run"—after crashing into the victim, who was riding her bike to school.[1] On appeal, defendant argues that the trial court erred by refusing to give her requested special jury instruction, which would have allowed the jury to excuse defendant's actions if it found that she reasonably and honestly believed that it was impossible to act in accordance with ORS 811.700. Defendant also challenges the court's restitution order by arguing that she was entitled to the civil law defense of comparative fault and, therefore, should be required to pay only 51 percent of the restitution order, which would align with the trial court's finding that she was 51 percent responsible for causing the accident. We reject defendant's arguments and, accordingly, affirm the trial court's judgment.[2]

We review the refusal to give a jury instruction for legal error and view the evidence in the light most favorable to the party that requested the instruction. *State v. Strye*, 273 Or App 365, 368, 356 P3d 1165 (2015). We review restitution orders for legal error. *State v. McClelland*, 278 Or App 138, 141, 372 P3d 614, *rev den*, 360 Or 423 (2016). We recount the facts consistent with those standards.

BACKGROUND

In May 2014, the victim, a student at McMinnville High School, was riding her bike to school. As she approached the school, she saw a van parked by the curb in the school parking lot. The victim attempted to pass the van from behind and enter the sidewalk in front of the van. At that

---

[1] ORS 811.700 (2013) is the version that was in effect at the time of the crime in this case. That statute has since been amended several times, most recently by Oregon Laws 2018, chapter 22, section 1. All references in this opinion are to the 2013 version.

[2] Defendant also raises an unpreserved challenge to the imposition of restitution. She argues that there was no evidence that the victim's medical expenses were reasonably and necessarily incurred. We reject that argument without discussion.

moment, defendant, who had just dropped off her daughter at school, pulled out and hit the victim. Defendant testified:

> "I looked around and put my arm out because my signal wasn't working, and I looked around and made sure that there was nobody coming in all the directions, and I didn't see anybody. I looked at my daughter again to make sure she was standing over there out of the way and then I looked again and then I started to pull out to go around and I probably went about a foot, foot and a half and then a car or a bike came flying beside me and hit the front bumper side of my car."

Seeing the victim and her damaged bike on the ground, defendant asked the victim if she was okay. The victim said that she was fine. The bike was visibly damaged; the bike's metal basket was "completely folded over" and the "front tire was bent in." Defendant then got out of her van and twice asked the victim if she was okay; both times, the victim said that she was fine. Defendant explained:

> "She said she was fine, but I got out of my car to check again and I went up to her and asked her if she was okay and she said yes, I'm fine, and she stood up and dusted herself off and picked up her bike and started to leave. And I said hey, excuse me, are you sure you're okay and she said I'm fine. And kept walking towards the school. She kind of went like that and kind of glanced at me a little bit, but kept going forward. And I watched her walk to the bike rack."

Defendant then looked around to find a place to park, and, in that time, the victim was lost in a crowd of other students entering the school. At no point during her exchange with the victim did defendant offer or provide any of the necessary information required by ORS 811.700(1)(a).[3]

---

[3] ORS 811.700(1)(a) provided, in part:

"If the person is the driver of any vehicle involved in an accident that results only in damage to a vehicle that is driven or attended by any other person the person must perform all of the following duties:

"(A) Immediately stop the vehicle at the scene of the accident or as close thereto as possible. * * *

"(B) Remain at the scene of the accident until the driver has fulfilled all of the requirements under this paragraph.

"(C) Give to the other driver or passenger the name and address of the driver and the registration number of the vehicle that the driver is driving and the name and address of any other occupants of the vehicle."

Defendant was charged for "unlawfully and knowingly" violating ORS 811.700. At trial, defendant asked the trial court to give a special jury instruction providing that, if defendant honestly and reasonably believed that it was impossible under the circumstances to provide the information required by ORS 811.700(1)(a)(C), she did not have the requisite mental state to be convicted of a hit and run. The trial court refused to give the special instruction, and the jury convicted defendant.

At sentencing, defendant argued that, with respect to restitution for the victim's damages, defendant should have to pay the amount of damages that are commensurate with her apportioned amount of fault found by the trial court, which the court found to be 51 percent. The trial court rejected that argument and required defendant to pay 100 percent of the victim's damages to her bike and attendant medical expenses resulting from the crash.[4] Defendant then initiated this appeal.

## CHALLENGE TO THE REFUSAL TO GIVE THE SPECIAL JURY INSTRUCTION

It is well established that a party "is entitled to have the jury instruction on the law which supports his [or her] theory of the case where there is evidence to support that theory and the party submits an instruction that correctly states the law." *State v. Loew*, 130 Or App 370, 373, 881 P2d 837 (1994) (citation omitted); *see also State v. Beck*, 269 Or App 304, 309, 344 P3d 140, *rev den*, 357 Or 164 (2015) ("A jury instruction is supported by the evidence if there was any competent evidence to support it." (Internal quotation marks and citation omitted.)).

At trial, defendant requested, based on *State v. Monroe*, 101 Or App 379, 790 P2d 1188 (1990), the following special jury instruction:

---

[4] In imposing the entire amount of damages claimed on behalf of the victim, the trial court imposed both a compensatory fine and a restitution award to an insurance company. Defense counsel suggested that arrangement to ensure that the victim's family received her out-of-pocket expenses prior to the insurance company. Defendant does not assign error to the court's imposition of a compensatory fine, and we do not express an opinion on it. Notwithstanding the distinction between a compensatory fine and restitution award, we refer to those financial obligations as restitution throughout the opinion for simplicity.

"Although the law requires that the driver of a vehicle involved in an accident that results in damage to a vehicle must provide to the other party the driver's name, address, and the registration number of their vehicle, that act cannot be performed if it is rendered impossible because the other vehicle did not stop and remain at the scene. Therefore, if the defendant honestly and reasonably believed that the other party had not stopped and remained at the scene and that it was impossible to provide her name and address to the other party, she would be lawfully excused from performing such duty and could lawfully leave the scene.

"Thus, a defendant who honestly and reasonably believes that it is impossible, under all the circumstances as they exist, to perform a duty that the law requires, even if they are mistaken in their belief, does not have the culpable mental state necessary to make them guilty."

The trial court denied defendant's request because it did not "see any evidence *** of impossibility." We agree. As explained below, assuming without deciding that the instruction was a correct statement of the law, defendant was not entitled to the requested instruction because there was no evidence to support it.

Defendant argues that, based on her trial testimony, the jury could have found that she "honestly and reasonably believed that it would be impossible to comply with the duties required of her as the other party left the scene[.]" That argument, however, runs contrary to defendant's testimony and the circumstances surrounding the accident. First, defendant testified that she talked with the victim three separate times before she watched the victim walk off with her damaged bike and go into the school. Defendant first asked if the victim was okay immediately after crashing into her and while defendant was still in her van. The victim said that she was okay, and defendant, according to her own testimony, got out of her van and interacted with the victim two more times to see if she was okay. Those facts do not present a situation where defendant tried to convey the required information but was prevented from doing so.

Second, the circumstances surrounding the accident did not make it impossible to convey the required information. To be sure, defendant's three interactions with the

victim were brief. The victim and defendant's daughter both testified that it was approximately a minute or two before the victim left. At no point during that time, however, did defendant provide her name, address, or any of the other required information before or after checking to see if the victim was okay. Moreover, defendant did not make any effort to comply with the statute by entering the school to report the accident or attempt to leave the required information on the damaged bike.

This case does not present a situation where, for example, the victim was unconscious as a result of an accident, thereby creating a circumstance where it might have been impossible to convey the required information.[5] Nor does this case present a scenario where the victim immediately left the scene without interacting with defendant at all. Rather, as discussed, defendant had three separate opportunities to convey the required information before the victim entered the school. And once the victim entered the school, it may have been more difficult to comply with the statute, but a higher degree of difficulty is not synonymous with impossibility.

Accordingly, because there is no evidence to support that it was impossible for defendant to comply with her obligations under ORS 811.700, the trial court did not err in denying her requested special jury instruction.

## CHALLENGE TO RESTITUTION

To put defendant's restitution challenge in perspective, we begin with a brief discussion of restitution generally and then turn to restitution in the hit-and-run context. Oregon has more than one restitution statute. The legislature has enacted ORS 137.106, which is known as the general criminal restitution statute. Under that statute, the restitution inquiry focuses on whether a crime has

_____

[5] Unlike ORS 811.705(1)(f), which involves the duties of a driver involved in an accident resulting in an injury and that outlines what a driver should do if the victim is unconscious or otherwise incapable of receiving the driver's information, ORS 811.700(1)(a) does not explicitly address what a driver must do if the victim is unconscious or otherwise incapable of receiving information. In this case, however, there is no evidence that the victim was incapable of receiving information from defendant had she attempted to fulfill her statutory duties.

"resulted in" economic damages, which "is a function of two considerations, namely, causation and foreseeability." *State v. Gerhardt*, 360 Or 629, 635, 385 P3d 1049 (2016); *see also id.* at 636 (explaining that *State v. Ramos*, 358 Or 581, 368 P3d 446 (2016), holds that restitution may be awarded under ORS 137.106 if the defendant's crime "was a factual cause of the victim's economic damages and those damages were the reasonably foreseeable consequence of the crime").

The legislature has also enacted ORS 811.706, which is a restitution statute that applies to ORS 811.700 and ORS 811.705, the "hit and run" statutes. *See State v. Hval*, 174 Or App 164, 173-76, 25 P3d 958, *rev den*, 332 Or 559 (2001) (describing the history of ORS 811.706). ORS 811.706 provides:

> "When a person is convicted of violating ORS 811.700 or 811.705, the court, in addition to any other sentence it may impose, may order the person to pay an amount of money equal to the amount of any damages caused by the person as a result of the incident that created the duties in ORS 811.700 or 811.705."

At this juncture, it is important to draw a distinction between the criminal conduct and noncriminal conduct present in ORS 811.700. Under ORS 811.700, the criminal conduct is not the accident itself; rather, the criminal conduct is the failure to provide the necessary information to the victim of the accident. Notably, ORS 811.706 provides restitution for the damage resulting from the accident, not the failure to provide information. *See State v. Webster*, 220 Or App 531, 535, 188 P3d 329, *rev den*, 345 Or 318 (2008) (explaining that the trial court's determination to impose accident-related restitution under ORS 811.706 "is not about the damage caused by the defendant in committing the crime of conviction—it is about the damage caused by the defendant in the incident that gave rise to the defendant's duties under ORS 811.700"); *see also Hval*, 174 Or App at 178 n 4 (noting testimony from Representative Prozanski that the purpose of ORS 811.706 "was to permit a person who has had their car sideswiped or their fence knocked down to recoup their restitution or their damages" (internal quotation marks omitted)). Thus, one of the primary differences between ORS 811.706 and ORS 137.106 is that the "hit and

run" restitution statute provides for restitution for conduct that is not criminalized under that statute, *i.e.*, the accident; whereas the general restitution statute provides for restitution for damages directly arising from the criminal conduct.

It is against that statutory backdrop that defendant argues that she was entitled to the statutory defense of comparative fault. She asserts that "the legislature intended for traditional concepts of civil liability, including comparative fault, to apply to restitution awards under [ORS 811.706]."[6] Defendant also argues that, after *State v. Gutierrez-Medina*, 365 Or 79, 442 P3d 183 (2019), we "must consider whether *** defendant would be able to assert comparative fault in a hypothetical civil action in the same circumstances." In response, the state asserts that ORS 811.706 does not incorporate concepts of civil law and that *Gutierrez-Medina* does not compel a contrary conclusion.

Defendant's argument requires us to construe the text, context, and any pertinent legislative history of ORS 811.706. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (outlining the familiar statutory-interpretation framework). In prior decisions interpreting the statute, we have explained that, "[b]y its express terms, ORS 811.706 allows a court to order payment of an amount of money equal to 'any damages caused by the person as a result of the incident that created the duties' enumerated in ORS 811.700 and ORS 811.705." *Hval*, 174 Or App at 177. We have also explained that ORS 811.706 limits the reach of any restitution award in two important respects: "Recoverable damages must not only have been 'caused by' the defendant, but must also have been 'as a result of the incident' that gave rise to obligations prescribed in ORS 811.700 or ORS 811.705." *State v. Bassett*, 243 Or App 289, 294, 259 P3d 953 (2011).

---

[6] ORS 31.600, which describes the statutory defense of comparative fault, provides, in part:

"(1) Contributory negligence shall not bar recovery in an action by any person *** to recover damages for death or injury to person or property if the fault attributable to the claimant was not greater than the combined fault of all of the persons specified in subsection (2) of this subsection, but any damages allowed shall be diminished in the proportion to the percentage attributable to the claimant."

Importantly, an award of damages under ORS 811.706 is "much narrower than the scope of the general restitution provisions in ORS 137.106." *Hval*, 174 Or App at 178; *see also State v. Anderson*, 280 Or App 572, 577, 380 P3d 1201 (2016) (explaining that "our conclusion in *Hval*— that the remedy provided by ORS 811.706 was not a civil remedy—did not hinge on the fact that those damages could only be recovered by specific persons, *i.e.*, property owners; instead, we reached that conclusion because the statute narrowly circumscribed what damages a trial court could order" (citation omitted)). Damages awarded under ORS 811.706 are "liquidated and easily measurable," and not "speculative, uncertain, and open-ended." *Hval*, 174 Or App at 178. Finally, "ORS 811.706 does not condition the type of restitution available under that statute on whether a defendant was convicted under ORS 811.700, as opposed to ORS 811.705, so long as the defendant is convicted under either of those statutes." *Bassett*, 243 Or App at 297.

Because the parties' arguments involve the Supreme Court's recent decision in *Gutierrez-Medina*, which was decided during the pendency of this appeal, we turn to that decision. The defendant in that case was ordered to pay restitution under ORS 137.106(1), the general restitution statute, and argued that the legislature intended to incorporate the civil concept of comparative fault into that statutory scheme. *Gutierrez-Medina*, 365 Or at 82-83. The court agreed, albeit in part, concluding that,

> "the statutory defense of civil comparative fault is available only to defendants who act with a degree of culpability for which the common law defense of contributory negligence would have been available. The common law defense based on a plaintiff's contributory negligence was not available to a defendant who acted with a culpability greater than what the common law considered to be 'gross negligence'— conduct that was either 'wanton' or intentional."

*Id.* at 83-84. The court noted that, "[t]o reach defendant's desired conclusion, his argument requires us to accept his minor premise that, in a hypothetical civil action against him for causing the same injury, the defense of comparative fault would be available to reduce his liability. The premise is not sound." *Id.* at 83. Before the trial court, the defendant had

pleaded guilty to third-degree assault. *Id.* at 81. Therefore, according to the court, "even if we assume that the legislature intended to incorporate the civil law defense of comparative fault into the calculation of criminal restitution under ORS 137.106, the defense would be unavailable to a defendant who commits third-degree assault [with the mental state of recklessness]." *Id.* at 84. Because the defendant admitted as part of his plea that he "recklessly" caused serious physical injury to the victim, his conviction "establishe[d] a degree of culpability that, if compared to common law civil concepts of fault, would fall within the range of culpability that represents 'wanton' conduct, and thus a degree of culpability for which the victim's negligence affords no defense." *Id.* at 92.

     In this case, defendant relies on *Gutierrez-Medina* and urges us to utilize the same approach, "which is to consider whether the defendant would be able to assert comparative fault in a hypothetical civil action in the same circumstances." Given the fundamental differences between ORS 811.706 and ORS 137.106, we conclude that the legislature did not signal an intent to incorporate concepts of civil liability into ORS 811.706. Therefore, we need not consider whether a defendant in a hypothetical civil action would be able to assert a comparative fault defense.

     The distinctions between the two restitution statutes are important to consider when comparing ORS 811.706 and ORS 137.106. The Supreme Court has noted that, when considering the interplay between the concepts of civil liability and criminal restitution, "the legislature's cross-reference to the definition of 'economic damages' applicable in civil actions, and the legislature's purpose in creating the restitution procedure as a substitute for a civil proceeding, make civil law concepts relevant to our interpretation of ORS 137.106." *Ramos*, 358 Or at 594.

     As noted earlier, ORS 811.706 is different. Unlike ORS 137.106, there is no cross-reference to a civil law definition of damages in the text or context of ORS 811.706. Certainly, ORS 811.706 makes a reference to payment for "any damages," which, "as a legal term of art, evolved as a term associated with a plaintiff's recovery against a defendant in a civil case" and "has a civil law connotation." *Ramos*,

358 Or at 592-93 (citation omitted). Defendant argues, therefore, that because the legislature used the term "damages" in ORS 811.706, "civil law concepts and statutes [should] provide context" to our analysis. But mere use of the term "damages" is not indicative of a broader legislative determination to incorporate comparative fault liability into ORS 811.706.

More fundamentally, we previously have rejected an argument that an award under ORS 811.706 is "civil in nature" because it "has all the earmarks of a penal sanction and all of the characteristics of a conventional award of criminal restitution," thus cutting against the notion that ORS 811.706 was intended to incorporate civil liability defenses. *Hval*, 174 Or App at 180-81; *see also Anderson*, 280 Or App at 577 (recognizing the conclusion in *Hval* that the remedy provided by ORS 811.706 was not a civil remedy). Therefore, without any textual indication that the legislature intended to incorporate civil liability concepts into the hit-and-run restitution statutory framework, we hold that defendant cannot avail herself of the comparative fault defense found in ORS 31.600.[7] Thus, by the explicit terms of ORS 811.706, the trial court may award restitution for "any damages caused by the person as a result of the incident that created the duties in ORS 811.700 or 811.705."[8] Accordingly, the trial court did not err in declining to award restitution according to an apportioned percentage of fault.

Affirmed.

---

[7] The parties have not pointed us to any pertinent legislative history that bears on the analysis. Indeed, defendant observes that "the legislative history [of ORS 811.706] is silent on the precise issue of comparative negligence," which is consistent with our observation that the legislative history is sparse. *See Bassett*, 243 Or App at 295 & n 6.

[8] To the extent that defendant argues that this construction of the statute could result in a "windfall" to the victim, it is certainly within the legislature's authority, of course, to amend ORS 811.706 to explicitly cross reference the applicability of ORS 31.600 or otherwise import comparative negligence concepts into the hit-and-run restitution framework to avoid potentially incongruous results (*e.g.*, where one victim has damages that are subject to comparative negligence concepts because that victim maintained a civil action against the driver and a similarly situated victim recovers damages under ORS 811.706). That policy choice, however, is not evident in the text and context of ORS 811.706, and it is not for us to insert that policy choice where the legislature has not signaled its intent to do so. *See* ORS 174.010 ("[T]he office of the judge is simply to ascertain and declare what is, in terms or in substance, contained [in the construction of a statute], not to insert what has been omitted[.]").