Argued and submitted March 30, affirmed October 5, 2022, petition for review denied March 30, 2023 (370 Or 827)

Donald E. MILLER
and Linda S. Miller,
*Plaintiffs-Respondents,*

*v.*

AGRIPAC, INC. et al.,
*Defendants,*
*and*

KAISER GYPSUM COMPANY, INC.,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CV08509; A174355

518 P3d 957

In this personal injury action, plaintiffs Miller and his wife asserted claims of negligence, strict product liability, and loss of consortium against defendant based on Miller's exposure to defendant's asbestos-containing construction product in the late 1960s. The trial court ruled that defendant was subject to common-law joint and several liability, because the action "arose" in the 1960s, such that the modern several-only liability statute did not apply. Meanwhile, to avoid the defense of comparative fault, plaintiffs sought to prove that defendant's negligence was "reckless" in nature, and the jury was instructed on "recklessness" for that purpose. The jury returned a verdict in plaintiffs' favor on all three claims, and the court entered a judgment for plaintiffs, including a $5,233,618 money award. On appeal, defendant raises three assignments of error. First, defendant challenges the ruling that defendant is jointly and severally liable for plaintiffs' damages. Second, defendant contends that the court's jury instruction on "recklessness," as relevant to the defense of comparative fault, was inconsistent with plaintiffs' claims and contrary to Oregon law. Third, defendant contends that, even if the "recklessness" instruction was not erroneous, the evidence was legally insufficient to prove defendant acted recklessly, and therefore the court should have granted a directed verdict for defendant on that issue. *Held*: The trial court did not err. Regarding the second and third assignments of error, the "recklessness" instruction correctly stated the legal standard for the type of conduct that plaintiffs sought to prove, and the evidence was legally sufficient to go to the jury on "recklessness" so defined. As for the first assignment of error, given the relationship between the comparative-fault defense and several-only liability under existing case law, and the jury's finding that defendant acted recklessly, any error in applying joint and several liability based on when the action "arose" was harmless.

Affirmed.

Leslie G. Bottomly, Judge.

J. Aaron Landau argued the cause for appellant. Also on the briefs was Harrang Long Gary Rudnick P.C.

Nadia H. Dahab argued the cause for respondents. Also on the brief were Sugerman Law Office; and Jennifer Green and Maune Raichle Hartley French & Mudd LLC.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

In this personal injury action, plaintiffs Donald Miller (Miller) and his wife Linda Miller have asserted claims of negligence, strict product liability, and loss of consortium against defendant Kaiser Gypsum Company, Inc., based on Miller's exposure to an asbestos-containing construction product sold by defendant in the 1960s. Plaintiffs also alleged similar claims against other defendants, based on Miller's exposure to other asbestos-containing products over several decades of his life; however, by the time of trial, defendant was the only remaining defendant. The jury returned a verdict in plaintiffs' favor on all three claims. Based on that verdict, the trial court entered a judgment requiring defendant to pay $5,233,618 in damages to plaintiffs.

Defendant appeals, raising three assignments of error. First, defendant challenges the trial court's ruling that defendant is jointly and severally liable for plaintiffs' damages, based on the court's conclusion that plaintiffs' action "arose" in the 1960s and therefore is not subject to the modern several-only-liability statute. Second, defendant argues that the court's jury instruction on "recklessness," as relevant to the defense of comparative fault, was inconsistent with plaintiffs' claims and contrary to Oregon law. Third, defendant argues that, even if the "recklessness" instruction was not erroneous, the court should have granted a directed verdict for defendant on that issue, because the evidence was legally insufficient to prove that defendant acted recklessly.

For the reasons explained below, we conclude that the "recklessness" instruction was properly given and legally correct. We further conclude that the evidence was legally sufficient to go to the jury on whether defendant was "recklessly" negligent. We therefore reject the second and third assignments of error. As for the first assignment of error, given our disposition of the other assignments, and the relationship between the comparative-fault defense and several-only liability under existing case law, we conclude that any error in applying joint and several liability based on when the action "arose" was harmless. Accordingly, we affirm.

## I. FACTS

Miller, who was born in 1948, was exposed to asbestos on numerous occasions for the first 36 years of his life. He comes from a family of asbestos workers. He grew up going to job sites with family members, played in asbestos boxes as a child, shook out his father's work clothes while doing laundry, and worked as a teen in asbestos product fabrication. He began his own career in insulation after high school.

Between October 1966 and April 1969, Miller worked as a mechanical insulator in various commercial and industrial buildings in the Portland area. He personally worked mainly with fiberglass materials, but drywall workers were also present at the jobsites. Drywall workers use "joint compound" to fill the seams between sheets of drywall (also called sheetrock or wallboard) after mounting. Joint compound usually comes as a powder. It is mixed with water, applied as a paste, and then sanded after it dries. Multiple coats of joint compound are applied to achieve a smooth finish before painting. On a daily basis, as he worked, Miller would breathe in drywall dust produced by drywall workers' mixing and sanding of joint compound. Some of that joint compound was defendant's product, which contained asbestos.

Miller changed jobs in April 1969. His exposure to asbestos-containing products continued until 1984. There is no evidence that Miller was exposed to defendant's asbestos-containing products after 1969, however, so any exposures after 1969 would be attributable to other companies' products. Miller retired in 2003.

Because of his known exposure to asbestos, Miller's health was regularly checked by his doctor. In June 2018, a CT scan showed something suspicious. In January 2019, at age 70, Miller was diagnosed with mesothelioma, a cancer closely associated with asbestos exposure. Miller and his wife brought this action against more than 50 defendants, based on their alleged involvement in Miller's exposure to asbestos. Only the claims against defendant went to trial. All of the other defendants were dismissed before trial as a result of bankruptcy, settlement, or otherwise.

Before trial, plaintiffs moved for a ruling that defendant would be subject to joint and several liability for all of plaintiffs' damages. Historically, defendants have been jointly and severally liable in personal injury actions, either as a matter of common law, *e.g.*, *Hanson v. The Bedell Co. et al.*, 126 Or 155, 157, 268 P 1020 (1928), or, after 1975, as a matter of statute, Or Laws 1975, ch 599, § 3; *former* ORS 18.485 (1975), *renumbered as* ORS 31.610 (2003). In 1995, however, the legislature largely eliminated joint and several liability for personal injury actions "arising on or after" September 1, 1995. Or Laws 1995, ch 696, §§ 5, 7; *see former* ORS 18.485 (1995), *renumbered as* ORS 31.610 (2003). In their pretrial motion, plaintiffs argued that their claims against defendant "arose" in the 1960s when Miller was exposed to defendant's product, such that joint and several liability should apply. Defendant countered that the action arose in 2018, when Miller developed mesothelioma symptoms, such that defendant's liability should be several only, *i.e.*, limited to the damages that defendant's own product caused. The court took the issue under advisement and, after trial began, ruled that the action arose in the 1960s and that joint and several liability therefore applied.

Meanwhile, plaintiffs sought leave to amend their complaint to allege that defendant's negligence was "wanton and reckless" in nature, such that defendant could not use the defense of comparative fault. Defendant opposed the amendment, arguing, among other things, that plaintiffs had not brought a claim for wanton or reckless conduct and were trying to "squeeze an intentional tort into a negligence or strict liability claim." The court allowed the amendment. Plaintiffs then filed their Fourth Amended Complaint, which included an allegation that plaintiffs' claims are not subject to ORS 31.600, the comparative-fault statute, because defendant "engaged in the alleged conduct wantonly and recklessly in that [defendant's] actions and omissions presented an unreasonable and highly probable risk of substantial bodily harm and [defendant] consciously disregarded said risk or reasonably should have been aware of said risk."

At the close of plaintiffs' evidence, defendant moved for directed verdict on plaintiffs' "wanton and reckless conduct"

allegation. In response, plaintiffs noted "preliminarily" that they were "withdrawing their allegation of wanton conduct" and would "instead proceed as to reckless conduct only." They then proceeded to argue that there was sufficient evidence to create a jury issue as to whether defendant engaged in "reckless conduct." In making that argument, plaintiffs defined "reckless conduct" as "the intentional doing or failing to do an act when one knows or has reason to know of facts which would lead a reasonable person to realize that their conduct not only creates an unreasonable risk of harm to others but also involves a high degree of probability that substantial harm will result"—which was the same definition that plaintiffs had previously used for "wanton and reckless" conduct. The court denied defendant's directed verdict motion. It also denied a renewed motion at the close of all evidence.

After the close of all evidence, the court instructed the jury. As relevant to the defense of comparative fault, plaintiffs proposed an instruction on "recklessness," which used the same definition as plaintiffs' previously proposed instruction on "wanton and reckless." The court gave that instruction over defendant's objection. The jury was therefore instructed:

> "Plaintiffs charge that Kaiser Gypsum's conduct in this case was reckless. Recklessness means an intentional doing or failing to do an act when one knows or has reason to know of facts which would lead a reasonable person to realize that their conduct not only creates unreasonable risk of harm to others but also involves a high degree of probability that substantial harm will result."

So instructed, the jury was asked on the verdict form whether defendant's conduct was "reckless in its negligence."

The jury returned a verdict for plaintiffs on all three claims—negligence, strict product liability, and loss of consortium. The jury found that Miller was exposed to defendant's asbestos-containing product, that the product was unreasonably dangerous, that the product's unreasonably dangerous characteristic was a substantial contributing factor in causing Miller's mesothelioma, that defendant was negligent, that defendant was "reckless in its negligence,"

that defendant's negligence was a substantial contributing factor in causing Miller's mesothelioma, and that Miller was not negligent. Given the trial court's ruling that defendant was subject to joint and several liability for plaintiffs' damages, the jury was not asked to apportion liability among the defendants.

The court entered a general judgment in plaintiffs' favor, which included a money award requiring defendant to pay $5,233,618 in damages. To arrive at that amount, the court deducted pretrial settlements with other defendants from plaintiffs' total damages. Those reductions were based on the actual settlement amounts, however, not any apportionment of damages between defendants. Defendant appeals.

## II.   ANALYSIS

A.   *Overview of the Relevant Statutory Scheme*

As a foundation for our discussion of the issues raised in this appeal, it is helpful to have a basic understanding of the history of the current statutes regarding the affirmative defense of comparative fault, ORS 31.600; apportionment findings, ORS 31.605; and several-only liability, ORS 31.610—both individually and as they relate to one another.

Prior to 1971, when a plaintiff suffered bodily injury as the result of the negligence of multiple defendants, each negligent defendant was jointly and severally liable for the plaintiff's damages, as a matter of common law. *See Hanson*, 126 Or at 157. If the plaintiff's own negligence contributed at all to the injury, however, the plaintiff was barred from recovering *any* damages, based on the common-law doctrine of contributory negligence. *State v. Gutierrez-Medina*, 365 Or 79, 84, 442 P3d 183 (2019).

In 1971, the legislature replaced the common-law defense of "contributory negligence" with the statutory defense of "comparative fault," which is less absolute. Or Laws 1971, ch 668, § 1; *see Hampton Tree Farms Inc. v. Jewett*, 158 Or App 376, 392, 974 P2d 738, *rev den*, 329 Or 61 (1999) ("[T]he legislature adopted comparative fault to replace contributory negligence, which was an absolute bar

to recovery."). Under comparative fault, a plaintiff whose own negligence contributed to the injury can still recover, so long as the defendant's negligence was greater than the plaintiff's negligence; however, the plaintiff's recovery is diminished in proportion to his or her own negligence. The original comparative-fault statute stated:

> "Contributory negligence, including assumption of the risk, shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property if such negligence contributing to the injury was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of such negligence attributable to the person recovering."

*Former* ORS 18.470 (1971), *renumbered as* ORS 31.600 (2003).

In 1975, the legislature did several notable things. *First*, it made minor amendments to the comparative-fault statute, including, as relevant here, changing the word "negligence" to "fault" and recognizing the possibility of multiple defendants. Or Laws 1975, ch 599, § 1; *see former* ORS 18.470 (1975), *renumbered as* ORS 31.600 (2003). The effect of the change to "fault" is discussed in *Sandford v. Chev. Div. Gen. Motors*, 292 Or 590, 642 P2d 624 (1982). As for multiple defendants, the amendment clarified that the plaintiff's fault was to be compared to "the *combined* fault of the person *or persons* against whom recovery is sought[.]" *Former* ORS 18.470 (1975) (emphases added). *Second*, the legislature abolished the common-law doctrines of last clear chance and implied assumption of risk. Or Laws 1975, ch 599, § 4; *see former* ORS 18.475 (1975), *renumbered as* ORS 31.620 (2003). *Third*, the legislature enacted a new statutory provision to create a mechanism for apportioning fault. Upon the request of any party, the trier of fact must make findings as to both the plaintiff's total damages and "[t]he degree of each party's fault expressed as a percentage of the total fault attributable to all parties represented in the action," and, in a jury trial, the "jury shall be informed of the legal effect of" those findings. Or Laws 1975, ch 599, § 2; *see former* ORS 18.480 (1975), *renumbered as* ORS 31.605 (2003).

*Fourth*, the legislature enacted a "joint and several liability" statute, thus codifying the common-law doctrine of joint and several liability. Or Laws 1975, ch 599, § 3; *see former* ORS 18.485 (1975).

Twenty years passed without substantial changes to the aforementioned laws. Then, in 1995, two things happened. Most significantly, the legislature eliminated joint and several liability, with certain exceptions, for personal injury actions "arising on or after" September 9, 1995:

> "(1)  Except as otherwise provided in this section, in any civil action arising out of bodily injury, death or property damage, including claims for emotional injury or distress, loss of care, comfort, companionship and society, and loss of consortium, *the liability of each defendant for damages awarded to plaintiff shall be several only and shall not be joint.*"

Or Laws 1995, ch 696, §§ 5, 7; *see former* ORS 18.485(1) (1995). Subsection (2) addressed how the court should calculate each person's liability, including using "the percentages of fault determined by the trier of fact under ORS 18.480" and setting out "the several liability of each defendant" in the judgment "based on the percentages of fault determined by the trier of fact under ORS 18.480." *Former* ORS 18.485(2) (1995). Subsections (3), (4), and (5) provided for reallocation of an "uncollectible share" in certain circumstances. *Id.* §§ (3)-(5). Subsection (6) excepted certain types of civil actions—involving hazardous waste, air pollution, and other specified environmental claims—from the statute altogether. *Id.* § (6).

The other thing that the legislature did in 1995 was amend the comparative-fault statute. Prior to 1995, the plaintiff's fault was compared to "the combined fault of the person or persons against whom recovery is sought[.]" *Former* ORS 18.470 (1993), *renumbered as* ORS 31.600 (2003). In 1995, the legislature expanded and refined the group whose combined fault should be compared to the plaintiff's—and moved that information to a new subsection. After the amendment, the plaintiff's fault was to be compared to "the combined fault of all persons specified in

subsection (2)." *Former* ORS 18.470(1) (1995), *renumbered as* ORS 31.600 (2003). Subsection (2), in turn, provided that the plaintiff's fault should be compared "with the fault of any party against whom recovery is sought, the fault of third party defendants who are liable in tort to the claimant, and the fault of any person with whom the claimant has settled"—except for persons who were immune from liability to the claimant, not subject to the jurisdiction of the court, or not subject to action because the claim against them is barred by a statute of limitation or statute of ultimate repose, who are excluded, *unless* they have settled with the claimant, in which case they are included. *Former* ORS 18.470(2) (1995).

The legislature made a related amendment to the apportionment mechanism in *former* ORS 18.480. Instead of requiring a court to provide, upon request, special findings on "[t]he degree of each party's fault expressed as a percentage of the total fault attributable to all parties represented in the action," *former* ORS 18.480 (1993), *renumbered as* ORS 31.605 (2003), the amended statute required the court to provide, upon request, special findings on "[t]he degree of fault of each person specified in ORS 18.470(2)," which was to be "expressed as a percentage of the total fault attributable to all persons considered by the trier of fact pursuant to ORS 18.470." *Former* ORS 18.480 (1995), *renumbered as* ORS 31.605 (2003).

With the 1995 amendments, the statutes became materially the same as today's statutes, at least as relevant to this appeal. The statutes were reorganized, however, in 2003. The defense of comparative fault is now described in ORS 31.600(1):

"(1) Contributory negligence shall not bar recovery in an action by any person or the legal representative of the person to recover damages for death or injury to person or property if the fault attributable to the claimant was not greater than the combined fault of all persons specified in subsection (2) of this section, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the claimant. This section is not intended to create or abolish any defense."

The group of persons whose collective fault is to be compared to the plaintiff's fault is now in ORS 31.600(2), which provides:

"(2) The trier of fact shall compare the fault of the claimant with the fault of any party against whom recovery is sought, the fault of third party defendants who are liable in tort to the claimant, and the fault of any person with whom the claimant has settled. The failure of a claimant to make a direct claim against a third party defendant does not affect the requirement that the fault of the third party defendant be considered by the trier of fact under this subsection. Except for persons who have settled with the claimant, there shall be no comparison of fault with any person:

"(a) Who is immune from liability to the claimant;

"(b) Who is not subject to the jurisdiction of the court; or

"(c) Who is not subject to action because the claim is barred by a statute of limitation or statute of ultimate repose."

And the mechanism for apportioning fault among the plaintiff and that group of people is now in ORS 31.605, along with the requirement that the court inform the jury of the legal effect of its apportionment findings:

"(1) When requested by any party the trier of fact shall answer special questions indicating:

"(a) The amount of damages to which a party seeking recovery would be entitled, assuming that party not to be at fault.

"(b) The degree of fault of each person specified in ORS 31.600(2). The degree of each person's fault so determined shall be expressed as a percentage of the total fault attributable to all persons considered by the trier of fact pursuant to ORS 31.600.

"(2) A jury shall be informed of the legal effect of its answer to the questions listed in subsection (1) of this section."

As for the several-liability-only statute, it is now ORS 31.610, and it has been updated to reflect the renumbering of cross-referenced statutes, but it remains substantively the same as it was when originally enacted in 1995.

B. *The Issues on Appeal*

We return to the specifics of this case. In its first assignment of error, defendant challenges the trial court's ruling that defendant is jointly and severally liable for plaintiffs' damages, which was based on the court's conclusion that plaintiffs' action "arose" in the 1960s, when Miller was exposed to defendant's product, rather than in 2018, when Miller developed mesothelioma symptoms. (The severally-only-liability statute, ORS 31.610, applies to actions "arising on or after" September 9, 1995.) In its second assignment of error, defendant challenges the jury instruction on "recklessness," as relevant to the availability of the defense of comparative fault. In its third assignment of error, defendant argues that, even if the jury instruction on "recklessness" was correct, the court erred by denying defendant's motion for a directed verdict on that issue, because the evidence was legally insufficient to prove that defendant acted "recklessly."

Although not immediately obvious, all three assignments of error are ultimately presented only for their relevance to the issue of joint and several liability. The jury found Miller to be 0% at fault for plaintiffs' damages, so comparative fault is no longer relevant as an affirmative defense against plaintiffs. The reason that the parties continue to argue about the defense of comparative fault and the "recklessness" instruction is because, in plaintiffs' view, a defendant who cannot use the comparative-fault defense is also excluded from the scope of the modern several-only-liability statute. That is, in plaintiffs' view, even if this action "arose" in 2018, after the effective date of the several-only-liability statute, defendant would still be jointly and severally liable for damages caused by other defendants so long as the "reckless" finding stands.

Because of the particular relationship between the three assignments of error, we begin with the second and third assignments of error.

C. *The Jury Instruction on "Recklessness"*

As previously described, this case involves negligence and strict product liability claims, and the jury found

defendant to have been negligent. However, plaintiffs specifically alleged that defendant "engaged in the alleged conduct wantonly and recklessly"; the jury was instructed on "recklessness"; and the jury found defendant to have been "reckless in its negligence." That begs the question why we are discussing recklessness in connection with a negligence claim. The answer lies in the case law regarding comparative fault and its historic predecessor, contributory negligence.

In the world of torts, there are four categories of "conduct" into which an "infinite" number of factual situations may be placed: (1) simple negligence; (2) gross negligence; (3) an aggravated form of negligence that is often described as "wanton" or "reckless" conduct; and (4) intentional misconduct. *Gutierrez-Medina*, 365 Or at 86-87. Historically, only defendants who committed simple or gross negligence (the first two categories) could use the defense of contributory negligence against a plaintiff who had contributed to his or her own injury. *Id.* at 87. Defendants who acted in a "wanton" manner (the third category) could not use the defense of contributory negligence to prevent recovery by a negligent plaintiff. *Id.* Even if their conduct technically qualifies as "negligent," defendants in the third category are treated differently from defendants who commit simple or gross negligence; they are treated more like intentional tortfeasors. *Cook v. Kinzua Pine Mills Co. et al*, 207 Or 34, 42-43, 293 P2d 717 (1956) (describing the third category as an "aggravated form of negligence, approaching intent," which "differs from negligence not only in degree but in kind, and in the social condemnation attached to it"). That said, "wanton" conduct remains distinct from "intentional" conduct. *See Gutierrez-Medina*, 365 Or at 92.

In 1971, the legislature replaced the common-law defense of contributory negligence with the statutory defense of comparative fault. However, the distinction discussed in the last paragraph remains in place. For a defendant to use the defense of comparative fault, the defendant's conduct must be "equivalent to conduct for which the defense of contributory negligence would have been available before 1971." *Id.* at 85. That is, in a negligence action, a defendant who committed simple or gross negligence can use the defense of comparative fault against a negligent plaintiff—to reduce

the plaintiff's award or even, if the plaintiff was sufficiently negligent, prevent any recovery—but a defendant who acted in a "wanton" manner cannot. "[U]nder the common law, if a defendant's conduct could be characterized as 'wanton,' then the plaintiff's contributory negligence was no defense. That is the line that the legislature carried forward when it created the defense of comparative fault: if the defendant's conduct was at least 'wanton,' comparative fault is no defense." *Id.* at 87.

In this case, plaintiffs alleged that defendant's negligent conduct was "wanton and reckless" and that the comparative-fault statute therefore did not apply. Plaintiffs later "withdrew" the "wanton" allegation. The jury was then instructed on "recklessness"—but with the same definition that plaintiffs had previously proposed for "wanton and reckless." Specifically, the jury was instructed:

> "Recklessness means an intentional doing or failing to do an act when one knows or has reason to know of facts which would lead a reasonable person to realize that their conduct not only creates unreasonable risk of harm to others but also involves a high degree of probability that substantial harm would result."

So instructed, the jury found that defendant was "reckless in its negligence."

Defendant first contends that giving that instruction was inconsistent with plaintiffs' "assurances" to the court. We understand the thrust of that argument to be that plaintiffs misled the court and defendant by claiming to withdraw their "wanton" allegation, but then requesting an instruction that really described "wanton" conduct.

We are unpersuaded. As we will discuss shortly, there is not a settled label for the third category of tortious conduct, and there is also a history of misuse and inconsistent use of terminology. There is no question that, in hindsight, plaintiffs could have been more precise about their intentions in "withdrawing" the "wanton" allegation. Their written and oral statements on the issue were not entirely clear in that regard. However, from the record as a whole, it is sufficiently apparent that, when plaintiffs "withdrew" the "wanton" allegation, they were not purporting to make

any change to the *substance* of their allegation against defendant, only its label. That is particularly evident from the fact that plaintiffs continued to use the same definition of the conduct that they were trying to prove as they always had. Plaintiffs could have been clearer about what they were doing, but, viewed as a whole, what they told the court was consistent with the instruction that they later requested.[1]

Turning to the instruction itself, defendant next argues that the instruction was legally incorrect. Defendant argues that the instruction does not describe reckless conduct but, instead, what defendant calls wanton, willful, and intentional conduct.[2] In defendant's view, recklessness is best defined as "a deviation from the standard of care that presents a 'substantial risk' that a result will occur," rather than a "conscious decision to act in a way that risks harm to another." Defendant points to the Oregon criminal code's definition of "recklessly" as an example. *See* ORS 161.085(9) ("'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.").

Plaintiffs respond that "reckless" and "wanton" are synonymous for comparative-fault purposes—both referring to the third category of tortious conduct—and that the instruction given was legally correct. Plaintiffs distinguish

---

[1] Relatedly, in their opposition to directed verdict, when discussing an insurance policy that contained the phrase "willful and wanton," plaintiffs stated that "reckless" conduct is obviously different from "willful and wanton" conduct. Defendant views that statement as plaintiffs expressly taking the position that "reckless" and "wanton" are different. However, it was the insurer that bundled together the terms "willful and wanton," and we disagree that distinguishing "reckless" from "willful and wanton" equates to distinguishing "reckless" from "wanton."

[2] It is not immediately apparent how defendant could have been harmed by an instruction that, in defendant's view, required the jury to find *too high* a degree of culpability before defendant would be foreclosed from using the defense of comparative fault. We need not consider that issue, however, given our disposition.

the fourth category of tortious conduct, "intentional" conduct. They assert that, to prove that a defendant's negligence was "reckless" (or "wanton"), it is unnecessary to prove that the defendant intended to inflict harm or "actually knew" that its conduct would create an unreasonable risk of harm, as is necessary to prove intentional misconduct.

"We review jury instructions for errors of law and will reverse only if we can fairly say that, when considering all of the instructions as a whole, the instruction at issue probably created an erroneous impression of the law in the minds of the jurors that affected the outcome of the case." *Lenn v. Baldwin*, 269 Or App 189, 193, 344 P3d 475 (2015) (internal quotation marks omitted). Here, we agree with plaintiffs that the instruction was substantively correct and would not have created an erroneous impression of the law in the jurors' minds.

The Supreme Court first outlined the four categories of tortious conduct in *Cook*, a 1956 case involving a vehicle accident on a logging road, in which the defendant sought to use the defense of contributory negligence against the plaintiff. 207 Or at 38-39. Describing the courts as "constantly confused and frustrated by the over-generous employment of adjectives in describing wrongful conduct," *id.* at 58, the court felt "compelled" to identify "four types of conduct into which the infinite variety of fact situations must fall:

> "(1) Simple negligence, subject to the defense of contributory negligence, (2) gross negligence which we have repeatedly held may be subject to the defense of contributory negligence, *(3) injury to the person of another committed in a 'wanton' manner, meaning the doing of an intentional act of an unreasonable character in disregard of a risk known to the actor, or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow, usually accompanied by a conscious indifference to consequences. In the third category contributory negligence is no defense and for conduct of that kind a trespasser may recover.* (4) Assault and battery where there is an actual intent not only to do an act but to cause personal injury."

*Id.* at 58-59 (emphasis added; internal citation omitted).

That same year, in *Falls v. Mortensen*, 207 Or 130, 132, 295 P2d 182 (1956), *overruled in part on other grounds by Lindner v. Ahlgren*, 257 Or 127, 477 P2d 219 (1970), the defendant was driving under the influence of alcohol when he struck the plaintiff, a pedestrian, who was crossing the street at night in a place other than an intersection. At trial, the jury was instructed that "contributory negligence is no defense to an action based upon a defendant's wanton disregard of the rights of others." *Id.* at 134. The jury was then given an instruction on the meaning of "wanton"—an instruction substantively identical to the "recklessness" instruction given in the present case:

> "Wanton misconduct is an intentional doing or failing to do of an act when one knows or has reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates unreasonable risk of harm to others but also involves a high degree of probability that substantial harm will result to him."

*Id.* at 135 (ellipses omitted).

On appeal, in addressing the defendant's challenge to that instruction, the Supreme Court recognized the importance of being clear about the four categories of tortious conduct. *Id.* at 141-42 ("The great obstacle to the development of a satisfactory system of tort law in this field arises from the fact that the courts have ascribed different meanings to the same words, with the result that it is difficult to draw the line between the various types of conduct as to which the law applies different legal consequences."). The court also recognized that "[t]he most difficult distinction, but one which frequently must be made, is that between gross negligence and wanton misconduct." *Id.* at 144. "In truth the distinction must be clearly explained to the jury because we have held that contributory negligence is a defense in an action for gross negligence but is not a defense in an action for wanton misconduct." *Id.* at 146.

After reviewing the Restatement, a leading treatise, and extensive out-of-court case law, the court concluded that the challenged instruction accurately described the third category of tortious conduct:

> "The definition of wanton misconduct, as given by the trial judge in the pending case, is supported by a great weight of authority. It makes clear the difference between such conduct and gross negligence. It also clarifies the difference between wanton misconduct and assault and battery. Both are the result of intentional action, but only the latter involves specific intent to injure the plaintiff."

*Id.* at 147. In explaining its reasoning, the court itself tended to use the term "wanton" to refer to the third category of tortious conduct. *See id.* at 136-47. However, the court's discussion makes clear that "wanton" and "reckless" are alternative terms for the third category. *See id.* By contrast, the term "willful" should not be used for any of the categories, as it has been used so variously over time that "the word does not connote a definite quality of conduct." *Id.* at 144.[3]

Rolling forward 70 years, the Supreme Court recently addressed the nature of "wanton" conduct, as relevant to the civil defense of comparative fault, in *Gutierrez-Medina*. The underlying events in that case were similar to those in *Falls*: The defendant was driving under the influence of intoxicants when he struck a pedestrian, who was crossing the street at night in a place other than a pedestrian crossing. *Gutierrez-Medina*, 365 Or at 81. The procedural posture of *Gutierrez-Medina* was quite different, however, in that *Gutierrez-Medina* was a criminal appeal. The defendant was convicted of driving under the influence of intoxicants and third-degree assault and ordered to pay almost $155,000 in restitution to the crime victim. *Id.* The defendant argued on appeal that the sentencing court should have applied the civil-law defense of comparative fault—given the relationship between criminal restitution and civil economic damages—and that "the victim's own negligence was the primary cause of the collision." *Id.* at 81 & n 1, 83.

---

[3] We acknowledge that, notwithstanding the admonition in *Falls*, both we and the Supreme Court have occasionally continued to use "willful" to mean "wanton." *See, e.g.*, *Taylor v. Lawrence*, 229 Or 259, 264, 366 P2d 735 (1961) (describing "reckless disregard of safety" as "an equivalent for wilful or wanton misconduct"); *Hampton Tree Farms*, 158 Or App at 393-95 (repeatedly using "wilful" to mean "wanton").

On review, the court assumed arguendo that the defense of comparative fault could be considered in awarding restitution. *Id.* at 84. However, it concluded that the defense would be unavailable to this defendant in a civil action for the same injury, because his third-degree assault conviction "establishes a degree of culpability for which the defense of comparative fault would be unavailable in a civil action." *Id.* at 81. Given how third-degree assault is defined, by pleading guilty to that crime, the defendant necessarily admitted "that he was aware that he was using a deadly or dangerous weapon in a way that created a substantial risk of serious physical injury and that he consciously disregarded that risk." *Id.* at 82. That admission "would require a hypothetical civil jury to conclude that defendant's culpability fell with the range of 'wanton' conduct." *Id.* at 84. Consequently, the defense of comparative fault would not be available. *Id.* at 87. In so concluding, the court rejected the defendant's argument that his conduct came within the category of "gross negligence," so as to allow the defense. *Id.* at 87-88.

In conducting its analysis in *Gutierrez-Medina*, the court relied on prior case law regarding the third category of tortious conduct, particularly *Falls*, which it described as a case in which the court "undertook to clarify the range of culpable conduct that will be considered 'wanton.'" *Id.* at 89-90. The court then essentially reaffirmed its holding in *Falls* that the "wanton misconduct" instruction that was given in *Falls* was legally correct. *Id.* at 90. The court also spoke approvingly of "reckless" as an alternative term for "wanton," *id.* at 91, while emphasizing that the word "wanton," as used for comparative-fault purposes, "describe[s] not only a person who acted with actual knowledge and disregard of the risk but also one who acted without such knowledge if a reasonable person would have realized the risk," *id.* at 92.

With that case law in mind, we consider defendant's challenge to the jury instruction in this case, and we readily conclude that the instruction correctly described the third category of tortious conduct.

It is of no consequence that the instruction was framed as defining "recklessness"—or at least no one made

any arguments to the trial court that would have required it to consider using "wanton" or another term to label the category of conduct that it was defining for the jury. There are potential downsides to both terms, as far as the word itself suggesting too much or too little. *See, e.g.*, *Falls*, 207 Or at 143 (recognizing confusion regarding the meaning of "wanton," due to "a failure on the part of litigants and some courts to distinguish between intent to act wantonly on the one hand, and intent to injure the particular plaintiff, on the other"); *Cook*, 207 Or at 41-42 ("The word 'reckless' appears in conjunction with the word 'negligent' in most of the complaints coming to this court which are intended to charge and which have been held to charge simple negligence."). That is precisely why it is so important to instruct the jury accurately on the meaning of whatever term is used.

As for the accuracy of the instruction that was given, the Supreme Court has already approved a substantively identical instruction as an accurate definition of "wanton" or "reckless" conduct, *i.e.*, the third category of tortious conduct. The instruction was approved in *Falls* and reaffirmed in *Gutierrez-Medina*. Defendant's argument that we should adopt a different definition of "reckless," adapted from the criminal statutes, conflicts with that case law. The same is true of defendant's argument that "recklessness" is not an "element" of negligence and cannot be shoehorned into a negligence action. It is beyond dispute at this point that a plaintiff may assert that a defendant was negligent, while also asserting that the defendant acted recklessly, in the hopes of not only prevailing on the negligence claim but also cutting off the defense of comparative fault. Lastly, defendant's contention that the "recklessness" instruction given in this case actually described "intentional" misconduct is not well-taken, given existing case law. Although the historical case law contains inconsistencies, the Supreme Court recently reaffirmed that "wanton" (or "reckless") conduct is an aggravated form of negligence that differs from "intentional" misconduct. "Intentional" misconduct involves not only a conscious intent to act but also a conscious intent to cause harm. *Gutierrez-Medina*, 365 Or at 87. As instructed, to find defendant reckless, the jury in this case had to find that defendant intended to act, but it did not have to find

that defendant actually intended to harm plaintiffs. That is an instruction on "wanton" or "reckless" conduct (the third category), not "intentional" misconduct (the fourth category).

In sum, the trial court's "recklessness" instruction correctly stated the legal standard for the third category of tortious conduct. It was not erroneous to give that instruction. We therefore reject defendant's second assignment of error.

D.   *The Denial of a Directed Verdict on "Recklessness"*

In its third assignment of error, defendant challenges the trial court's denial of defendant's motion for directed verdict as to the "recklessness" allegation. "We review the denial of a motion for directed verdict for any evidence to support the verdict in favor of the nonmoving party." *Hoff v. Certainteed Corp.*, 316 Or App 129, 132, 503 P3d 457 (2021), *rev den*, 369 Or 785 (2022) (internal quotation marks omitted). In doing so, we view the evidence, including all reasonable inferences therein, in the light most favorable to the nonmoving party. *Lyons v. Beeman*, 311 Or App 560, 564, 494 P3d 358, *rev den*, 368 Or 513 (2021). We will not disturb the jury's verdict "[u]nless there is no evidence from which the jury could have found the facts necessary to support plaintiffs' claim." *Hoff*, 316 Or App at 132; Or Const, Art VII (Amended), § 3.

Defendant argues that the evidence was legally insufficient for a reasonable juror to find that, between October 1966 and April 1969, when Miller was exposed to defendant's joint compound, defendant knew or had reason to know that the use of its product would expose drywall installers and others working nearby to airborne asbestos at levels sufficient to make it highly probable that substantial harm would result. Plaintiffs disagree, contending that the evidence was sufficient for a reasonable jury to find that defendant's conduct was "reckless" as defined in the jury instruction.

We do not believe that it would be particularly helpful to the bench or bar to recount the specific evidence in this case. We have carefully reviewed that evidence, and we

agree with plaintiffs that it was sufficient to go to the jury. In particular, we agree that there was sufficient evidence to allow a jury to find that, in the relevant time period, defendant acted or failed to act when, to quote the jury instruction, defendant had "reason to know of facts which would lead a reasonable person to realize that their conduct not only creates unreasonable risk of harm to others but also involves a high degree of probability that substantial harm would result." In other words, viewing the evidence in the light most favorable to plaintiffs, we cannot say that there was *no evidence* to support a finding that defendant acted "recklessly" as that term was defined. We therefore reject defendant's third assignment of error.

Together, our rejection of the second and third assignments of error means that the jury's finding that defendant was "reckless in its negligence" will stand. It follows, under well-established case law, that the defense of comparative fault is unavailable to defendant.

E.   *Joint and Several Liability*

Our resolution of the second and third assignments of error brings us back to defendant's first assignment of error, in which defendant challenges the trial court's ruling that it is jointly and severally liable for plaintiffs' damages. Plaintiffs maintain that, given our disposition of the second and third assignments of error, we "need not reach" the first assignment of error.

As we understand it, plaintiffs' position is that there are *two* legal consequences to a defendant being found to have committed negligence in a "reckless" manner: (1) the defendant cannot use the defense of comparative fault against the plaintiff, as a matter of well-established case law before and after 1971, *and* (2) the several-only-liability statute enacted in 1995 does not apply, as a matter of statutory construction, and the defendant therefore remains subject to common-law joint and several liability. Defendant did not respond on this issue in its briefing and, at oral argument, took a somewhat equivocal position.

As a preliminary matter, we note that, if plaintiffs are correct about the relationship between the availability

of the comparative-fault defense and the applicability of the several-only-liability statute, we would still "reach" the first assignment of error. However, we would not need to resolve what the legislature meant by actions "arising on or after" September 9, 1995—*see* Or Laws 1995, ch 696, §§ 5, 7— because any error that the trial court made in applying joint and several liability based on the action having "arisen" in the 1960s would be harmless. *See* ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."). That is, even if the trial court was wrong, and the action "arose" in 2018, it would have no effect on defendant's liability, because the jury's "recklessness" finding would independently take defendant outside the scope of the several-only-liability statute, such that defendant would still be subject to common-law joint and several liability.

Turning to the substance of plaintiffs' harmlessness argument, we conclude that plaintiffs' argument is supported by *Shin v. Sunriver Preparatory School, Inc.*, 199 Or App 352, 111 P3d 762, *rev den*, 339 Or 406 (2005). In that case, we held that an allegedly negligent tortfeasor (a private school) was not entitled to apportionment findings under ORS 31.605, where the negligent tortfeasor sought to avoid liability for the wrongdoing of an intentional tortfeasor (the plaintiff's father) who raped the plaintiff (a student). *Id*. at 354. The upshot of *Shin* is that the group of people identified in ORS 31.605—the group whose collective negligence is to be compared to the plaintiff's negligence for purposes of the defense of comparative fault—does not include people who behaved wantonly or intentionally. *See id*. at 376. Because those people are simply not in the comparison group, they not only cannot rely on the defense of comparative fault themselves, but no one can look to them for apportionment under ORS 31.605.[4] *See id*.

_____

[4] There are practical ramifications to excluding "wanton" defendants from the comparison group in a negligence action. If the plaintiff was negligent, the comparison group being smaller could result in the plaintiff having a higher percentage of fault relative to the smaller group. Also, the trier of fact (whether jury or judge) will have to account for its culpability findings in making apportionment findings, as accidentally including a wanton defendant in the comparison group would result in the percentages of the "real" comparison group not adding up to 100% as required by ORS 31.605.

We note that *Shin* itself involved intentional misconduct by the third-party defendant (the plaintiff's father) whose liability the defendant wanted apportioned, and *Shin* mostly discusses intentional misconduct. However, *Shin* uses the phrase "willful or intentional conduct" in a way that could be intended to refer to *wanton* or intentional conduct. *See id.* ("Before the adoption of comparative fault, contributory negligence was not a defense to willful or intentional misconduct."). In any event, the logic of *Shin* necessarily applies to both the third and fourth categories of tortious conduct. There is no basis to distinguish between the third and fourth categories of conduct for comparative-fault purposes, and *Shin*'s reasoning is grounded almost entirely in the comparative-fault statute, ORS 31.600.

*Shin* also addresses the several-only-liability statute, however, briefly but decisively. *See Shin*, 199 Or App at 378-79. *Shin* concludes that the reference in ORS 31.610 (the several-only-liability statute) to ORS 31.605 (the apportionment mechanism) has the effect of limiting the scope of ORS 31.610 to the same people who can use the defense of comparative fault against a negligent plaintiff, *i.e.*, the group of people identified in ORS 31.605 whose collective negligence is compared to the plaintiff's for purposes of the defense of comparative fault. *See id.* Anyone not included in that group is not covered by the several-only-liability statute. *See id.* The implication is that common-law joint and several liability continues to apply to those excluded tortfeasors, eliminating any benefit to their requesting apportionment findings under ORS 31.605. *See id.*

*Shin* appears to be the only published case making a connection between the availability of the comparative-fault defense, ORS 31.600, and the applicability of the several-only-liability statute, ORS 31.610, and its discussion is extremely brief. However, defendant has not developed any argument to distinguish *Shin*, nor has it identified any error in *Shin*'s reasoning. Under *Shin*, plaintiffs are correct that, regardless of when plaintiffs' action "arose," defendant is jointly and severally liable for all of plaintiffs' damages, based on the jury's "reckless" finding. That being the case, any error that the trial court made in concluding that joint and several liability applies based on when the action "arose"

was harmless. Joint and several liability would apply anyway, based on *Shin*'s construction of ORS 31.610. We therefore reject the third assignment without further discussion.

Affirmed.